PETROPLUS, JUDGE:
Pursuant to a plan, all of the property surrounding the State Capitol was to be acquired by the State Building Commission of West Virginia to develop and provide a cohesive group of office buildings to be used and occupied by state agencies. The property owned by the Claimant was in the area encompassed by what was known as the “State Capitol Master Plan”. The Claimant was the owner of a 12-unit apartment building at 1715 Quarrier Street in the City of Charleston, which building was fully occupied by tenants. On April 21, 1970, the State Road Commission of West Virginia, acting in cooperation with the West Virginia State Building Commission, sent the following letter to all of the tenants in the apartment building:
“Re: Project Capitol Complex Parcel 130
The West Virginia State Building Commission has authorized the Right of Way Division of the West Virginia Department of Highways to acquire and relocate the occupants of those properties bounded by Quarrier Street on the North, Duffy Street on the East, Virginia Street and Kanawha Boulevard on the South, and Greenbrier Street on the West.
Appraisals of the real estate are being made and fair market values will be offered to property owners. Relocation assistance in finding replacement housing and reimbursement of moving costs are available to owners and tenants who must relocate because of this project. Right of Way Agents and Relocation Assistants are making personal contacts with those persons affected.
The acquisition and vacating of properties is expected to be completed between July 15 and July 30, 1970, so that the structures may be removed at the earliest possible date,
*66 If we have been unable to contact you, or if you wish further information, please call 344-1831.
/s/ David L. Jack, Administrator Capitol Complex Project Department of Highways.”
It is to be noted that the tenants were told that the State would acquire the property between July 15 and July 30, 1970, so that the structures could be removed at the earliest possible date.
As a natural consequence of this letter, the tenants who were on terminable leases, began to look for other living quarters, the first tenant moving from the apartment on May 8, 1970, and the last tenant vacating on July 19, 1970.
Other property owners in the area, among which the Claimant was not included, applied to the Supreme Court of Appeals of the State of West Virginia on July 21, 1970, for a Writ of Prohibition. The Supreme Court issued a temporary restraining order and on December 15, 1970, a permanent Writ of Prohibition in the case styled State ex rel. Hall, et al. v. Taylor, et al. 178 S.E.2d 48. While the Claimant’s property was not directly involved in that case, the Writ of Prohibition affected all property in the proposed complex. The 1971 Legislature thought up another way to finance the complex and legislation was passed which subsequently had to be tested for its constitutionality in the Supreme Court. In the meantime, the Claimant was losing $1,080.00 a month in rentals from the unoccupied apartment building. The West Virginia Department of Natural Resources, however, did rent the building from month to month for a period beginning October, 1970, and ending April, 1971, for a rental of $1,000.00 per month, and prior to that period and subsequent thereto the building has remained vacant. Up to the time the claim was filed, September 27, 1971, no condemnation proceedings had been filed by the Respondent.
Article 3, Section 9, of the West Virginia Constitution provides:
“Private property shall not be taken or damaged for public use, without just compensation.”
The issue in this case is whether action on the part of the State prior to actual taking will give rise to damages. The problem is of first impression in this State, and as far as this Court can determine *67 there has been no reported decision on the matter. When eminent domain proceedings are instituted, the Claimant receives the fair market value of his property as damages, without any allowance for loss of rentals therefrom which result from the anticipation of a public improvement which does not constitute an actual taking. Technically, the taking occurs when the State secures a court order for right of entry upon the property. Many reported decisions hold that the serving or giving of a notice of intention to condemn does not constitute a taking of or damaging of the property in the constitutional sense, since there is no physical taking or invasion of the owner’s right to use his property. In those cases it has been held that notice to the owner does not interfere with the owner’s right to use his property as he sees fit, and the actual bringing of court proceedings constitutes the taking of the property.
The facts of this case, however, go beyond a notice to the owner. The notices were sent to the tenants of the owner which we deem to be an invasion of the contractual rights between the owner and his tenant. The Respondent has defended this claim on the theory that the notices to the tenants were void and of no legal effect and should have been ignored by the tenants. Even though this may be true, this Court cannot assume that the tenants did seek legal advice on the validity of notices issued by the State which in effect advised them to move by a certain date. It is reasonable to assume that a notice from an official agency of the state government would be acted upon by the tenants, and the facts of this case disclose that all of the tenants moved out of the building in accordance with the State’s notice.
It is the opinion of the Court that it would be a manifest injustice to the property owner, who finds himself with an unoccupied building for a long period of time, to deny relief. The inaction of the State in instituting eminent domain proceedings tended to depreciate the market value of an unrentable budding. Although it is true in this case that the State was without fault in the long delay because of the litigation in the Supreme Court of Appeals which restrained the State from taking action until the constitutionality of the legislature was tested. Although the State is not culpable for the delay, damage did ensue to the property owner, who was also without fault.
It is our opinion that the State has a moral obligation to compensate the property owner for the loss of rentals under the unusual facts of this case for the prolonged delay in taking legal action to *68 acquire the property after notices were sent to the tenants to vacate the property. Inasmuch as the lost rentals cannot be recovered in a condemnation proceeding, the property owner incurs a substantial loss by the delay of the State in acquiring the property. The mere planning of the public improvement or the fact that the tenants learn of contemplated condemnation or elect to vacate the property would not afford the owner the right to recover damages from the State because there has been no physical invasion of the property. It is always possible that the condemnation may be completely abandoned and the property never taken. In this case the State took affirmative action to cause loss of tenants and resulting loss of rentals. We are constrained to hold that the notices to vacate sent to the tenants constitute a “de facto” taking, and if an unreasonable time elapses before the property is actually acquired, there is a moral and compelling obligation to compensate the owner for his loss of rentals, at least during the time of unreasonable delay.
We are of the opinion to award the Claimant loss of rentals beginning with the month of April, 1971, and ending with the month of August, 1971, a period of five months, in the amount of $5,425.00, that sum being the aggregate rental from the twelve apartments for said period. In accordance with the modern construction of the term, a “taking” of property does not require an actual physical taking, but may consist of an interference with the rights of ownership, use, and enjoyment of the property. Two annotations on what constitutes a “taking” appear in 37 A.L.R. 3d 127 and 29A C.J.S. Sec. 110, and authorities are cited both ways on the issue of “taking”. The case of State v. Vaughan, 319 S.E.2d 349, wherein the facts were quite similar to the case before us, did not involve notices to the tenants, but only a notice to the property owner. We are not disposed to apply that precedent denying relief to the facts of this case.
Although we are cognizant that there is a split of authority on reported decisions, we believe that the usefulness of this property was effectually destroyed in July, 1970, by affirmative action of the Respondent and that compensation should be made to the owner for any unreasonable delay in acquiring the property, aside from any question of negligence on the part of the Respondent.
Claim allowed in the amount of $5,425.00.